UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:22-CR-00025-1-JRG-CRW |
| | ) | |
| TERRANCE LAMONT HINES, JR. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Terrance Lamont Hines, Jr.'s Motion for Judgment of Acquittal [Doc. 179] and the United States' Response [Doc. 199]. For the reasons herein, the Court will deny Mr. Hines's motion.

### I. BACKGROUND

Earlier this year, a petit jury convicted Mr. Hines of multiple drug and firearm offenses after a four-day trial, including the offense that the United States charged in Count One of the superseding indictment: a conspiracy to distribute a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. [Verdict Form, Doc. 172, at 1]. In convicting Mr. Hines of this offense, the jury made two crucial findings. First, it found that the amount of fentanyl attributable to him was 400 grams or more, and second, it found that death resulted from the use of the fentanyl—that is, that the overdose victim, Terri Garber, died from her use of the fentanyl that Mr. Hines had conspired to distribute. [*Id.* at 2]. The jury's findings triggered the enhanced penalty under § 841(b)(1)(A), which provides that a defendant, "if death or serious bodily injury results from the use of such substance[,] shall be [sentenced to a term of imprisonment] not less than 20 years or more than life." Under Federal Rule of Criminal Procedure 29, Mr. Hines now moves for a judgment of acquittal as to Count One.

## II. LEGAL STANDARD

Under Rule 29, a defendant may move, either at the close of the United States' evidence or within fourteen days of the jury's verdict, for a judgment of acquittal on "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a), (c)(1). In evaluating a motion under Rule 29, the Court does "not reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005) (citation omitted). Rather, "after viewing the evidence in the light most favorable to the prosecution," it determines whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted). In doing so, it must draw all reasonable inferences in the government's favor—including inferences from circumstantial evidence. *United States v. Ostrander*, 411 F.3d 684, 691 (6th Cir. 2005); *United States v. Davis*, 981 F.2d 906, 908 (6th Cir. 1992). A judgment of acquittal is therefore "confined to cases where the prosecution's failure is clear," *United States v. Donaldson*, 52 F. App'x 700, 706 (6th Cir. 2002) (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)), and "a defendant claiming 'insufficiency of the evidence bears a very heavy burden,'" *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006) (quotation omitted).

## III. ANALYSIS

Mr. Hines moves for a judgment of acquittal only "as to the drug weight and the death enhancement." [Def.'s Mot. at 2]. As to the drug quantity, Mr. Hines argues the evidence shows that "barely over 300 grams of fentanyl were involved in the charged conspiracy." [*Id.*]. As to the enhanced penalty for Ms. Garber's death, Mr. Hines makes a twofold argument: first, he appears to contend that another drug, not fentanyl, caused Ms. Garber's death, and second, he

2

Case 2:22-cr-00025-JRG-CRW   Document 215   Filed 10/13/23   Page 2 of 10   PageID #: 2543

contends that even if fentanyl did cause her death, she received the fentanyl not from Mr. Hines but from another supplier. [*Id.* at 3]. In other words, he maintains that he was not part of the chain of distribution that resulted in the placement of the fentanyl in Ms. Garber's hands. In response, the United States cites evidence—testimony, text messages, and other exhibits—showing that a rational trier of fact could have found that 400 grams or more of fentanyl was attributable to Mr. Hines and that Ms. Garber died from using fentanyl that Mr. Hines conspired to distribute.

**A. The Drug Quantity**

Mr. Hines concedes that the evidence shows that he was responsible for 303 grams of fentanyl: seventy grams of fentanyl from controlled buys between Mr. Hines and a confidential informant, ninety-three grams of fentanyl seized from his recording studio, and 140 grams of fentanyl from transactions between Mr. Hines and his co-defendant Robin Hutchins, who at the time was cooperating with the United States. [Def.'s Mot. at 2]. But, as the United States rightly argues, Mr. Hines overlooks evidence showing that additional quantities of fentanyl were seized from his recording studio and evidence showing that he engaged in additional sales of fentanyl.

First, the evidence, in the form of testimony from Special Agent Lott and an exhibit, showed that additional smaller bags containing approximately 17 total grams of fentanyl were also seized from Mr. Hines's recording studio. [United States' Ex. 57]. Second, the evidence—in the form of testimony from Special Agent Lott and text messages—also showed that Mr. Hines conducted transactions with contacts known as "Jank" and "Sis Bj" and that those transactions involved about 194 total grams of fentanyl. [Trial Tr. (on file with the Court);[1] United States'

---

[1] Special Agent Lott testified that some of these transactions involved fentanyl or heroin, but he also testified that drug dealers on the street commonly sell fentanyl and refer to it as heroin and that "most everything that's referred to on the street that's being called heroin comes back with fentanyl in it." [Trial Tr.].

3

Exs. 70b, 70g]. The fact that the United States did not indict Jank and Sis Bj as members of the conspiracy is "immaterial." *United States v. Sandy*, 605 F.2d 210, 216 (6th Cir. 1979). Any evidence showing that Mr. Hines conspired with them, despite their status as unindicted co-conspirators, is sufficient to sustain his conviction. *See United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) (stating that "[a] defendant may be . . . convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons" (citing *Rogers v. United States,* 340 U.S. 367, 375 (1951))).

Also, although Ms. Hutchins was acting as a cooperating witness for the United States and was, therefore, not legally a co-conspirator when she made her controlled buys from Mr. Hines, *see United States v. Pennell*, 737 F.2d 521, 536 (1984) ("[P]roof of an agreement between a defendant and a government agent or informer will not support a conspiracy conviction." (citations omitted)); *see also* [United States' Resp. at 3 (acknowledging that "Hutchins was a government agent and not technically a co-conspirator during these controlled buys")], "a government agent may serve as a 'link' between 'genuine' conspirators," *United States v. Rogers*, 118 F.3d 466, 478 (6th Cir. 1997) (quotation omitted). A cooperating witness may operate as a link between genuine co-conspirators when a defendant knows that he is not alone in the conspiracy and other participants are necessary to maintain the conspiracy. *Id.*

The trial record firmly establishes that "although [Mr. Hines] dealt directly only with a government agent" during the specific transactions at issue with Ms. Hutchins, "it was obvious and known to [him] that other participants were necessary to the enterprise," including Sis Bj. *Id.* (citation omitted). Indeed, Special Agent Lott testified that Sis Bj was, at least on occasion, Mr. Hines's supplier, *see* [Trial Tr. (testifying that "whoever Sis Bj is bought 40 grams of fentanyl

4

for Mr. Hines to sell")], and Ms. Hutchins testified that Mr. Hines, in turn, was her supplier. Ms. Hutchins was co-defendant Adam Presnell's supplier, and Mr. Presnell went on to supply fentanyl to co-defendant Shania Lanford,[2] who directly supplied Ms. Garber with the fentanyl that killed her. Also, Ms. Hutchins, Mr. Presnell, and Ms. Lanford all testified that they were part of the chain of distribution that placed the lethal dose of fentanyl in Ms. Garber's hands. [*Id.*].

So the evidence establishes that Ms. Hutchins was unquestionably a link between co-conspirators, and although she was acting as a cooperating witness when she made the relevant controlled purchases from Mr. Hines, the evidence, at a bare minimum, supports the reasonable inference that Mr. Hines knew he was not alone in the conspiracy because, to supply fentanyl to Ms. Hutchins, he first had to obtain it from his own supplier, Sis Bj. *See United States v. Soto*, 794 F.3d 635, 660 (6th Cir. 2015) (stating that "[Rule 29's] standard 'requir[es] only that jurors draw reasonable inferences from basic facts to ultimate questions'" (second alteration in original) (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012))). In short, the evidence shows that "it was obvious and known to [Mr. Hines] that other participants were necessary to the enterprise." *Rogers*, 118 F.3d at 478 (citation omitted). A rational trier of fact, therefore, could have readily concluded that he was accountable for at least 400 grams of fentanyl, which includes the amounts of fentanyl from his transactions with Ms. Hutchins, and the evidence therefore suffices to sustain his conviction as to the drug quantity.

**B. The Enhancement**

Next, Mr. Hines contends that no rational trier of fact could have concluded that Ms. Garber died from using fentanyl, much less from using fentanyl that he conspired to distribute. To support this contention, he claims that other co-defendants—Ms. Hutchins, Mr. Presnell, and

---

[2] Mr. Presnell and Ms. Lanford also later became cooperating witnesses for the United States.

Ms. Lanford—had used fentanyl more habitually than Ms. Garber and at higher doses than Ms. Garber, suggesting either that fentanyl is not ordinarily lethal or that another drug must have caused Ms. Garber's death. But Donna Papsun, a forensic toxicologist at NMS Labs, testified that people who habitually abuse fentanyl can develop a tolerance to it—which could explain why Ms. Hutchins, Mr. Presnell, and Ms. Lanford might have been able to use fentanyl without overdosing. Also, Dr. Andrea Orvik, a medical doctor and assistant professor in the Pathology Department at East Tennessee State University's Quillen College of Medicine, testified that fentanyl is fifty to a hundred times more potent than morphine and that Ms. Garber's blood contained thirteen nanograms of fentanyl per milliliter—over four times the amount of fentanyl that is normally considered lethal. Dr. Orvik also testified that Ms. Garber's cause of death was fentanyl and oxycodone intoxication because, together, they suppressed her nervous system, though she went on to clarify her testimony by opining that the "concentration of oxycodone alone without the fentanyl would not have been lethal." [Trial Tr.].[3] Relying on Ms. Papsun's and Dr. Orvik's testimonies, a rational trier of fact could have readily concluded that fentanyl caused Ms. Garber's death.

Mr. Hines, though, goes on to assert that no rational trier of fact could have found that Ms. Garber died from using fentanyl because "[t]he evidence at trial was that everyone who took the fentanyl that Presnell was providing only snorted it, and that [Ms. Garber] knew she was only supposed to snort it, but [Ms. Garber] was found dead with a syringe next to her." [Def.'s Mot. at 3]. With this argument, Mr. Hines again appears to believe that the evidence supports only the

---

[3] In this vein, the Court instructed the jury as follows: "The government, however, is not required to prove that the controlled substance was Ms. Garber's only cause of death. To the contrary, but-for causation exists when the use of the controlled substance combines with other factors to produce death, and death would not have occurred without the incremental effect of the controlled substance. The government need not prove that Ms. Garber's death was foreseeable to the defendant." *See United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015).

conclusion that a drug other than fentanyl caused Ms. Garber's death. This argument, however, lacks foundational support in the trial record.

Ms. Lanford testified that she purchased a powdered substance from Mr. Presnell on December 2, 2021, and after placing the powdered substance in a folded piece of paper, she packaged it in a cigarette box and delivered it to Ms. Garber, who died the next morning. Ms. Garber's husband testified that he found a cigarette box next to Ms. Garber's body and that the cigarette box contained a powdered substance inside a folded piece of paper. Lab results later confirmed that this substance was fentanyl. From all this evidence, a rational trier of fact could have readily concluded that Ms. Garber died from an overdose of fentanyl, and although Mr. Hines, in another effort to argue that fentanyl could not have caused Ms. Garber's death, insists users are "only supposed to snort [fentanyl]," [Def.'s Mot. at 3], Special Agent Lott disagreed, having testified that "there's different ways of ingesting heroin, fentanyl," including "inject[ing] it . . . with a syringe," [Trial Tr.].

In addition, Dr. Orvik testified that drug users will get high faster if they inject a drug into the bloodstream rather than snort it, and Ms. Garber's husband testified that Ms. Garber, as an experienced drug user, had "shot up" drugs in the past and even once developed a serious blood infection from intravenous drug use. [*Id.*]. The fact that Ms. Garber injected herself with fentanyl—whereas Ms. Hutchins, Mr. Presnell, and Ms. Lanford all snorted fentanyl, at least according to Mr. Hines—may explain why Ms. Garber died from an overdose but Ms. Hutchins, Mr. Presnell, and Ms. Lanford did not. *See* [Trial Tr. (containing Dr. Orvik's testimony that snorting a drug has a less intense effect on the user because the drug first has to pass through the mucosal membrane before it can enter the bloodstream)]. So, in sum, a rational juror could have

found from the evidence that Ms. Garber died from a fentanyl overdose—and, more specifically, that she died by injecting herself with, rather than snorting, fentanyl.

And lastly, Mr. Hines contends that he is entitled to a judgment of acquittal because no rational trier of fact could have found that he was part of the chain of distribution that placed the lethal dose of fentanyl in Ms. Garber's hands. According to Mr. Hines, the evidence shows that Ms. Garber "had multiple other drug providers, including purchasing fentanyl from Lanford on 12/2/2021 and from third parties other than Adam Presnell." [Def.'s Mot. at 2]. In response, the United States concedes this point, acknowledging that "while it is true that [Ms. Garber] and Lanford bought heroin/fentanyl from someone else the day before her death, the Facebook Messages [between them] suggested that [Ms. Garber] was unhappy with this drug because it was not strong enough." [United States' Resp. at 10]. The Court, however, lacks license under Rule 29 to substitute its own judgment for the jury's by weighing this conflicting evidence—i.e., the evidence that Ms. Garber and Ms. Lanford purchased fentanyl from someone else on the day before her death. *Martinez*, 430 F.3d at 330. The Court's role is simply to determine whether the record contains evidence that would allow a rational trier of fact to find, beyond a reasonable doubt, that Mr. Hines was part of the chain of distribution that placed the fatal dose of fentanyl in Ms. Garber's hands. *Jackson*, 443 U.S. at 319.

The trial record contains ample evidence from which a rational trier of fact could draw the reasonable inference that Mr. Hines was part of this chain of distribution. *See Soto*, 794 F.3d at 660 ("[Rule 29's] standard 'requir[es] only that jurors draw reasonable inferences from basic facts to ultimate questions.'" (second alteration in original) (quoting *Coleman v. Johnson*, 566 U.S. 650, 655 (2012))). Again, Special Agent Lott testified that "whoever Sis Bj is bought 40 grams of fentanyl for Mr. Hines to sell," [Trial Tr.], and from this testimony, a rational juror

could have found that Mr. Hines was a dealer of fentanyl. Ms. Hutchins then testified that Mr. Hines was her supplier, and she conceded that she "[was] part of the chain of distribution that sold the fentanyl that led to the death of Terri Garber." [*Id.*]. From this testimony, a rational juror could have found that Mr. Hines and Ms. Hutchins were part of the same chain of fentanyl distribution.

Mr. Presnell then testified that Ms. Hutchins was his supplier, and like Ms. Hutchins, he also conceded that he "[was] part of the chain of distribution that sold the fentanyl that led to the death of Terri Garber." [*Id.*]. From this testimony, a rational juror could have found that Mr. Hines, Ms. Hutchins, and Mr. Presnell were all part of the same chain of fentanyl distribution. And finally, Ms. Lanford, who directly provided Ms. Garber with the deadly dose of fentanyl, testified that Mr. Presnell was her supplier, and she conceded, too, that she "[was] part of the chain of distribution that sold the fentanyl that led to the death of Terri Garber." [*Id.*]. From this testimony, a rational juror could have found that Mr. Hines, Ms. Hutchins, Mr. Presnell, and Ms. Lanford were all part of the same chain of fentanyl distribution—and that this chain, link by link, was connected to the fatal dose of fentanyl that Ms. Garber used. Mr. Hines, therefore, fails to demonstrate that this case is one of those rare cases in which the United States has "clear[ly]" failed to marshal evidence sufficient to sustain a conviction, and he is not entitled to a judgment of acquittal. *Donaldson*, 52 F. App'x at 706 (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)).

### IV. CONCLUSION

As the movant for a judgment of acquittal under Rule 29, Mr. Hines fails to discharge his heavy burden, and his Motion for Judgment of Acquittal [Doc. 179] is therefore **DENIED**.

So ordered.

ENTER:

                                                              s/J. RONNIE GREER
                                            UNITED STATES DISTRICT JUDGE